## UNITED STATES *v.* BALINT ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 480. Argued March 7, 1922.—Decided March 27, 1922.

1. Whether *scienter* is a necessary element of a statutory crime, though not expressed in the statute, is a question of legislative intent to be answered by a construction of the statute. P. 251.

2. Punishment for an illegal act done by one in ignorance of the facts making it illegal, is not contrary to due process of law. P. 252.

3. To constitute the offense of selling drugs contrary to § 2 of the Anti-Narcotic Act, it is not necessary that the seller be aware of their character. P. 253.

Reversed.

ERROR to an order sustaining a demurrer to and quashing an indictment.

*Mr. William C. Herron*, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

No appearance for defendants in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

This is a writ of error to the District Court under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246. Defendants in error were indicted for a violation of the Narcotic Act of December 17, 1914, c. 1, 38 Stat. 785. The indictment charged them with unlawfully selling to another a certain amount of a derivative of opium and a certain amount of a derivative of coca leaves, not in pursuance of any written order on a form issued in blank for that purpose by the Commissioner of Internal Revenue, contrary to the provisions of § 2 of the act. The defendants demurred to the indictment on the ground that it failed to charge that they had sold the inhibited drugs knowing them to be such. The statute does not make such knowledge an element of the offense. The District Court sustained the demurrer and quashed the indictment. The correctness of this ruling is the question before us.

While the general rule at common law was that the *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did

not in terms include it (*Reg.* v. *Sleep,* 8 Cox C. C. 472), there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U. S. 57, 69, 70, in which it was held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide " that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.* *Commonwealth* v. *Mixer,* 207 Mass. 141; *Commonwealth* v. *Smith,* 166 Mass. 370; *Commonwealth* v. *Hallett,* 103 Mass. 452; *People* v. *Kibler,* 106 N. Y. 321; *State* v. *Kinkead,* 57 Conn. 173; *McCutcheon* v. *People,* 69 Ill. 601; *State* v. *Thompson,* 74 Ia. 119; *United States* v. *Leathers,* 6 Sawy. 17; *United States* v. *Thomson,* 12 Fed. 245; *United States* v. *Mayfield,* 177 Fed. 765; *United States* v. *36 Bottles of Gin,* 210 Fed. 271; *Feeley* v. *United States,* 236 Fed. 903; *Voves* v. *United States,* 249 Fed. 191. So, too, in the collection of taxes, the importance to the public of their collection leads the legislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends and meeting it at the peril of punishment. *Regina* v. *Woodrow,* 15 M. & W. 404; *Bruhn* v. *Rex,* [1909] A. C. 317. Again where one deals with others and his mere negligence may be dangerous to them, as in selling diseased food or poison, the

policy of the law may, in order to stimulate proper care, require the punishment of the negligent person though he be ignorant of the noxious character of what he sells. *Hobbs* v. *Winchester Corporation,* [1910] 2 K. B. 471, 483.

The question before us, therefore, is one of the construction of the statute and of inference of the intent of Congress. The Narcotic Act has been held by this court to be a taxing act with the incidental purpose of minimizing the spread of addiction to the use of poisonous and demoralizing drugs. *United States* v. *Doremus,* 249 U. S. 86, 94; *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 402.

Section 2 of the Narcotic Act, 38 Stat. 786, we give in part in the margin.[1] It is very evident from a reading of

---

[1] Part of § 2 of an act entitled An Act To provide for the registration of, with collectors of internal revenue, and to impose a special tax upon all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes, approved December 17, 1914, 38 Stat. 785, 786:

Sec. 2. That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. Every person who shall accept any such order, and in pursuance thereof shall sell, barter, exchange, or give away any of the aforesaid drugs, shall preserve such order for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employee of the Treasury Department duly authorized for that purpose, and the State, Territorial, District, municipal, and insular officials named in section five of this Act. Every person who shall give an order as herein provided to any other person for any of the aforesaid drugs shall, at or before the time of giving such order, make or cause to be made a duplicate thereof on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue, and in case of the acceptance of such order, shall preserve such duplicate for said period of two years in such a way as to be readily accessible to inspection by the officers, agents, employees, and officials hereinbefore mentioned.

it that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him. Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the difficulty of proof of knowledge contributed to this conclusion. We think the demurrer to the indictment should have been overruled.

*Judgment reversed.*

Mr. Justice Clarke took no part in this decision.