UNITED STATES of America, Plaintiff-Appellee,

v.

Juan Jose BETANCOURT, also known as Jose Juan Betancourt, Defendant-Appellant.

No. 28444.

United States Court of Appeals, Fifth Circuit.

June 1, 1970.

1. 42 U.S.C.A. §§ 2000a and 2000a–2 (1970).

Pursuant to our Rule 18, this case is decided without oral argument.

Ralph H. Atwell, Pensacola, Fla., for defendant-appellant.

William Stafford U. S. Atty., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before COLEMAN, GOLDBERG, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

The appellant, Juan Jose Betancourt, a Costa Rican, was indicted in the United States District Court for the Northern District of Florida:

"That on or about May 7, 1969, in the Northern District of Florida,

JUAN JOSE BETANCOURT,

also known as
Jose Juan Betancourt,

knowingly, and with intent to defraud the United States, did import and bring into the United States approximately ninety (90) marihuana cigarettes contrary to law in that they were not described or included on the manifest of the vessel Liberian MV INSCO JEM as required by Section 1431 of Title 19 of the United States Code. (21 USC 176a)."

Betancourt was subsequently tried to a jury, found guilty, and sentenced to imprisonment for five years. We affirm the judgment of the District Court.

On May 7, 1967, the Liberian MV INSCO JEM, out of Peru, laden with a thousand tons of fish meal pellets, docked at the Port of Pensacola. Aboard the vessel was the seaman by the name of Jose Betancourt, who was destined to become the appellant in this case.

The next day, Matthews, a Customs Port Investigator, accompanied by two informers who were never named and never subpoenaed by either the government or defendant, went aboard for the

purpose of detecting violations of the law (with emphasis on narcotics). They encountered Betancourt. According to the testimony for the government, he promptly stated that he had approximately ninety marihuana cigarettes, which he was willing to sell for fifty cents each.

Matthews described the conclusion of the transaction as follows:

"We returned to the vessel approximately 10 minutes after 3:00, we found the defendant who stated that he was still working, he had to work until 5:00 o'clock. He indicated for us to wait. We waited for approximately an hour aboard the vessel for him to get off work. He returned approximately 25 or 20 minutes to 4:00 and indicated for us to follow him to his room aboard the vessel. We did so. When we got in his room I showed him a roll of money that I had in my pocket, at which time he left the room stating he would be right back. He returned in approximately five minutes with a package that was wrapped in plastic, which he handed to me. I opened the package and saw it contained a number of cigarettes. I tore one open to see if it did contain marihuana. At this time one of the informers took one of the cigarettes and lit it, this he put out as soon as he lit it. After I was stating that the cigarettes, I was satisfied that the cigarettes in my opinion did contain marihuana, I identified myself to him and placed him under arrest."

That same afternoon Betancourt was given the *Miranda* warnings in Spanish by Jerry L. Owensby, criminal investigator for U. S. Customs. He testified that after receiving the warnings in the Customs Office at the Federal Building in Pensacola, appellant stated that he had a friend in Peru who owed him some money which he could not pay; that his debtor gave him the cigarettes, saying that they could be sold and the money thus obtained. Betancourt admitted to Owensby that he accepted the cigarettes,

carried them aboard the INSCO JEM, and brought them to Pensacola.

The case was tried with the assistance of an interpreter. Betancourt took the witness stand in his own defense and testified that he had the cigarettes for his own use, for the treatment of an asthmatic condition from which he suffered; that one of those who accosted him on board ship claimed to have the same condition, and that he promised to give that individual half of the cigarettes for medicinal use only. He denied that he had intended to sell the cigarettes or that he knew anything of the regulations requiring that they be listed on the manifest. That he had intended to defraud the United States was likewise denied.

The trial began at 9 o'clock, a. m., on July 8, 1969. The case went to the jury, at 6:13 p. m. At 7:25 p. m. the jury sent in a written question:

"Your Honor, the jury would like to know why the fat man [one of the informers] was not made to testify, or the ship Master?"

The Court responded:

"This is not a proper matter for your consideration. You must decide this case based upon, and only upon, the evidence before you. If the evidence before you is sufficient to establish beyond a reasonable doubt that the defendant is guilty, you should return a verdict of guilty, and if it is not, you should return a verdict of not guilty."

The jury then deliberated until 8:19 p. m., at which time the Court was informed that the jury was deadlocked. The Court then gave the *Allen* charge, in the form which has been repeatedly approved [although not unanimously so] in this Circuit. The jury retired at 8:29 p. m. At 10:23 p. m., it returned a verdict of guilty. Upon being individually polled, each juror affirmed his concurrence in the verdict.

Immediately after the Court adjourned, however, and while court appointed counsel for Betancourt was wait-

ing on the first floor of the Federal Building for a break in the weather outside, as were most of the members of the jury who had heard the case, one of the jurors, a lady, voluntarily approached counsel. She informed him that she was convinced that the defendant did not have an intent to defraud the United States but that she had been "convinced" by the other jurors that he should be found guilty as charged, that she had cried, and further that the jury had been split six to six immediately prior to the receipt of the *Allen* charge. A motion for a new trial on this score, that it confirmed the coercive nature of the charge, was denied.

It is undisputed that the applicable statutes and customs regulations required Betancourt to list the marihuana cigarettes on the ship's manifest, 19 U.S.C.A. § 1431; U. S. Customs Regulation 4.7(e) and 10.22b. It is equally undisputed that they were not so listed.

Title 21 U.S.C.A., § 176a provides that "whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000."

Appellant seeks reversal for three reasons: (1) The giving of the *Allen* charge was coercive; (2) Betancourt had no actual knowledge of the requirement that he should list the cigarettes on the ship's manifest; therefore a conviction based upon his failure to do so is a denial of due process; and (3) that to require Betancourt to register the marihuana cigarettes constituted a violation of his constitutional right against self incrimination because it would have subjected him to possible criminal prosecution under the laws of Florida.

■ The post trial statement of the lady juror cannot be used to impeach the jury verdict. See Medina v. United States, 9 Cir., 1958, 254 F.2d 228; Parsons v. United States, 5 Cir., 1951, 189 F.2d 252; Moore v. United States, 5 Cir., 1942, 125 F.2d 143.

The use of the *Allen* charge in this Circuit was most recently approved in Thaggard v. United States, 5 Cir., 1965, 354 F.2d 735, cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). See also, Williamson v. United States, 5 Cir., 1966, 365 F.2d 12.

■■ We are not blind to the fact that this trial had begun at 9 o'clock on the day of the verdict, that the jury did not get the case until 6:13 p. m., that it reported itself deadlocked at 8:26 p. m., and that it did not return its verdict until 10:23 o'clock of a stormy night. Possibly it would have been better if the trial court had recessed at 6:13 p. m., putting an end to a long day, allowing the jury to begin its deliberations the next morning. Trial courts are vested with wide discretion, and necessarily so, in the control of their day to day operations. There was no request from the jury that it might be allowed to suspend and go home. Counsel for Betancourt never requested such a recess. We perceive no basis for saying as a matter of law that the use of the *Allen* charge under the circumstances recited had a coercive effect on the jury. The *Allen* charge was not given in the *Thaggard* case until the second day of deliberations, when, it might have been said, the jury was more likely to look for a way to get out and go home.

We come now to the contention that the conviction in this case violates due process. The argument is that Betancourt did not know of the requirement that the cigarettes be listed on the manifest, that such registration was an indispensable ingredient of the offense, otherwise the importation would have been lawful, and hence to punish someone for the violation of a requirement of which he was ignorant is a denial of due process.

The argument is not new and, in one form or another, has been rejected by the Supreme Court. See Shevlin-Carpenter Company v. State of Minnesota, 1910, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed.

930; United States v. Balint, 1922, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604; United States v. Dotterweich, 1943, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48. In *Balint*, a Fourteenth Amendment due process case, the Supreme Court held that ignorance of the law will not excuse an *action* which violates the law.

Appellant relies on Lambert v. California, 1957, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, which reversed the conviction of a felon who had failed to register as required by a municipal ordinance. We do not think, however, that *Lambert* applies to the facts in Betancourt's case. The Supreme Court said "[W]e deal here with conduct that is wholly passive—mere failure to register. It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed".

At another point the Supreme Court said, "But the present ordinance is entirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking".[1]

Betancourt first admitted and later testified that he knowingly brought the marihuana cigarettes into the United States. He gave two versions of his motives—once he said they were for sale; at another time he swore that they were for medicinal use. Significantly, however, the testimony showed that he had not used any of the cigarettes since he left Costa Rica. They had been kept undisturbed in a plastic bag. More significantly, he kept them secreted in a place other than his own room.

We think the case is governed by the principles announced in Reyes v. United States, 9 Cir., 1958, 258 F.2d 744. The trial judge carefully and emphatically charged the jury that before it could convict it must believe from the evidence beyond a reasonable doubt that Betancourt acted knowingly and wilfully. The jury was entitled to infer, as its verdict indicated, that Betancourt's activities reflected a sophistication which was inconsistent with ignorance.

At the very least the jury was entitled to find, in the language of *Lambert*, supra, that there were circumstances present which should have alerted Betancourt "to inquire as to the necessity of registration".

■ We hold that this attack upon the conviction is unavailing.

■ We now consider the final attack, i. e., that the requirement that the cigarettes be listed on the manifest violated appellant's Fifth Amendment rights against self-incrimination in that it subjects him to possible criminal prosecution under the laws of Florida.

This was not a smuggling case, but in rationale it is analogous to Witt v. United States, 9 Cir., 1969, 413 F.2d 303, cert. denied 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230.

Betancourt, at the time of his apprehension, had not disembarked from the ship. We are therefore of the opinion that his situation is rationally similar to that of Rule v. United States, 5 Cir., 1966, 362 F.2d 215, cert. denied 385 U.S. 1018, 87 S.Ct. 744, 17 L.Ed.2d 554, and Walden v. United States, 5 Cir., 1969, 417 F.2d 698. We hold, therefore, that the plea of self incrimination is of no avail. See, also, the full statutory scheme, 26 U.S.C.A. § 4741 et seq.

We commend court appointed counsel upon the high quality of the representa-

---

1. The Court in *Lambert* said (355 U.S. at 227, 78 S.Ct. at 242): "No element of wilfulness is by terms included in the ordinance nor read into it by the California court as a condition necessary for a conviction". The California court therefore did not admit evidence concerning the defendant's knowledge. This seems to have been the vice in that case. In our case, on the other hand, 21 U.S.C.A. § 176a requires scienter, evidence on this matter was admitted, and it was found to exist by the jury.

tion he has accorded this indigent both here and in the court below.

The judgment of the District Court is Affirmed.