*578 Justice Stevens,
dissenting.
Accidents happen, but they seldom give rise to criminal liability. Indeed, if they cause no harm they seldom give rise to any liability. The Court today nevertheless holds that petitioner is subject to a mandatory additional sentence — a species of criminal liability — for an accident that caused no harm. For two reasons, 18 U. S. C. § 924(c)(1) (A)(iii) should not be so construed. First, the structure of § 924(c)(1)(A) suggests that Congress intended to provide escalating sentences for increasingly culpable conduct and that the discharge provision therefore applies only to intentional discharges. Second, even if the statute did not affirmatively support that inference, the common-law presumption that provisions imposing criminal penalties require proof of mens rea would lead to the same conclusion. Cf. United States v. X-Citement Video, Inc., 513 U. S. 64, 70 (1994). Accordingly, I would hold that the Court of Appeals erred in concluding that petitioner could be sentenced under §924(c)(l)(A)(iii) absent evidence that he intended to discharge his gun.
I
It is clear from the structure and history of § 924(c)(1)(A) that Congress intended § 924(c)(l)(A)(iii) to apply only to intentional discharges. The statute’s structure supports the inference that Congress intended to impose increasingly harsh punishment for increasingly culpable conduct. The lesser enhancements for carrying or brandishing provided by clauses (i) and (ii) clearly require proof of intent. Clause (i) imposes a 5-year mandatory minimum sentence for using or carrying a firearm “during and in relation to” a crime of violence or drug trafficking offense, or possessing a firearm “in furtherance” of such an offense. As we have said before, the provision’s relational terms convey that it does not reach inadvertent conduct. See Smith v. United States, 508 U. S. 223, 238 (1993) (“The phrase 'in relation to’... at a minimum, clarifies that the firearm must have some purpose or effect *579 with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence”). Similarly, elause (ii) mandates an enhanced penalty for brandishing a firearm only upon proof that a defendant had the specific intent to intimidate. See § 924(c)(4). In that context, the most natural reading of clause (iii), which imposes the greatest mandatory penalty, is that it provides additional punishment for the more culpable act of intentional discharge.[1]
The legislative history also indicates that Congress intended to impose an enhanced penalty only for intentional discharge. In Bailey v. United States, 516 U. S. 137, 148 (1995), the Court held that “use” of a firearm for purposes of § 924(c)(1) required some type of “active employment,” such as “brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire.” Congress responded to Bailey by amending § 924(c)(1), making it an offense to “posses[s]” a firearm “in furtherance of” one of the predicate offenses and adding sentencing enhancements for brandishing and discharge. See Pub. L. 105-386, § 1(a)(1), 112 Stat. 3469; see also 144 Cong. Rec. 26608 (1998) (remarks of Sen. DeWine) (referring to the amendments as the “Bailey Fix Act”). Given the close relationship between the Bailey decision and Congress’ enactment of the brandishing and discharge provisions, those terms are best read as codifying some of the more culpable among the “active employment^]” of a firearm that the Court identified in Bailey.
II
Even if there were no evidence that Congress intended § 924(c)(l)(A)(iii) to apply only to intentional discharges, the *580 presumption that criminal provisions include an intent requirement would lead me to the same conclusion. Consistent with the common-law tradition, the requirement of mens rea has long been the rule of our criminal jurisprudence. See United States v. United States Gypsum Co., 438 U. S. 422 (1978). The concept of crime as a “concurrence of an evil-meaning mind with an evil-doing hand... took deep and early root in American soil.” Morissette v. United States, 342 U. S. 246, 251-252 (1952). Legislating against that backdrop, States often omitted intent elements when codifying the criminal law, and “courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation.” Id., at 252. Similarly, absent a clear statement by Congress that it intended to create a strict-liability offense, a mens rea requirement has generally been presumed in federal statutes. See id., at 273; Staples v. United States, 511 U. S. 600, 605-606 (1994). With only a few narrowly delineated exceptions for such crimes as statutory rape and public welfare offenses, the presumption remains the rule today. See Morissette, 342 U. S., at 251-254, and n. 8; see also Staples, 511 U. S., at 606-607 (discussing United States v. Balint, 258 U. S. 250 (1922)).
Although mandatory minimum sentencing provisions are of too recent genesis to have any common-law pedigree, see Harris v. United States, 536 U. S. 545, 579, 581, n. 5 (2002) (Thomas, J., dissenting), there is no sensible reason for treating them differently from offense elements for purposes of the presumption of mens rea. Sentencing provisions of this type have substantially the same effect on a defendant’s liberty as aggravated offense provisions. Although a sentencing judge has discretion to issue sentences under § 924(c)(1)(A) within the substantial range bounded on one end by the 5-, 7-, or 10-year mandatory minimum sentence and on the other by the statutory maximum sentence, judges in practice rarely exercise that discretion. As Justice *581 Thomas noted in Harris, “the sentence imposed when a defendant is found only to have ‘carried’ a firearm ‘in relation to’ a drug trafficking offense appears to be, almost uniformly, if not invariably, five years,” and “those found to have brandished a firearm typically, if not always, are sentenced only to 7 years in prison while those found to have discharged a firearm are sentenced only to 10 years.” Id., at 578; see also United States Sentencing Commission, Guidelines Manual § 2K2.4, comment., n. 2 (Nov. 2008) (USSG) (stating that the minimum sentence required by § 924(c)(1)(A) is the Guideline sentence and any increase is an upward departure). If anything, imposition of a mandatory minimum sentence under § 924(c)(1)(A) will likely have a greater effect on a defendant’s liberty than will conviction for another offense because, unlike sentences for most federal offenses, sentences imposed pursuant to that section must be served consecutively to any other sentence. See § 924(e)(l)(D)(ii).
As the foregoing shows, mandatory minimum sentencing provisions are in effect no different from aggravated offense provisions. The common-law tradition of requiring proof of mens rea to establish criminal culpability should thus apply equally to such sentencing factors. Absent a clear indication that Congress intended to create a strict-liability enhancement, courts should presume that a provision that mandates enhanced criminal penalties requires proof of intent. This conclusion is bolstered by the fact that we have long applied the rule of lenity — which is similar to the mens rea rule in both origin and purpose — to provisions that increase criminal penalties as well as those that criminalize conduct. See United States v. R. L. C., 503 U. S. 291, 305 (1992) (plurality opinion); Bifulco v. United States, 447 U. S. 381, 387 (1980); Ladner v. United States, 358 U. S. 169, 178 (1958).[2] *582 Accordingly, I would apply the presumption in this case and avoid the strange result of imposing a substantially harsher penalty for an act caused not by an “evil-meaning mind” but by a clumsy hand.
The majority urges the result in this case is not unusual because legislatures commonly “punish individuals for the unintended consequences of their unlawful acts,” ante, at 575, but the collection of examples that follows this assertion is telling. The Court cites the felony-murder rule, 18 U. S. C. §1111, and Sentencing Guidelines provisions that permit increased punishment based on the seriousness of the harm caused by the predicate act, see USSG §2A2.2(b)(3) (increasing the offense level for aggravated assault according to the seriousness of the injury); § 2D2.3 (increasing the offense level for operating a common carrier under the influence of alcohol or drugs if death or serious injury results). These examples have in common the provision of enhanced penalties for the infliction of some additional harm. By contrast, § 924(c)(l)(A)(iii) punishes discharges whether or not any harm is realized. Additionally, in each of the majority’s examples Congress or the Sentencing Commission made explicit its intent to punish the resulting harm regardless of the perpetrator’s mens rea. Section 924(c)(1)(A)(iii) contains no analogous statement. For these reasons, § 924(c)(l)(A)(iii) is readily distinguishable from the provisions the majority cites.
Contrary to the majority’s suggestion, the existence of provisions that penalize the unintended consequences of felo *583 nious conduct underscores the reasonableness of reading § 924(c)(l)(A)(iii) to require proof of intent. When harm results from a firearm discharge during the commission of a violent felony or drug trafficking offense, the defendant will be punishable pursuant to USSG § 2B3.1(b)(3) (increasing the offense level for robbery according to the resulting degree of bodily injury), the felony-murder rule, or a similar provision. That a defendant will be subject to punishment for the harm resulting from a discharge whether or not he is also subject to the enhanced penalty imposed by § 924(c)(l)(A)(iii) indicates that the latter provision was intended to serve a different purpose — namely, to punish the more culpable act of intentional discharge.
Ill
In sum, the structure and history of § 924(c)(1)(A) indicate that Congress meant to impose the more substantial penalty provided by clause (iii) only in cases of intentional discharge. Were the statute unclear in that regard, I would reach the same conclusion by applying the presumption that Congress intended to include a mens rea requirement. Mandatory sentencing provisions are not meaningfully distinguishable from statutes defining crimes to which we have previously applied the presumption; the rule of Morissette and Staples and not the felony-murder rule should therefore guide our analysis. Because there is insufficient evidence to rebut the presumption in this case, I respectfully dissent.

 Contrary to the Court’s suggestion, ante, at 572-578, Congress’ provision of a specific intent element for brandishing and not for discharge only supports the conclusion that Congress did not intend enhancements under the discharge provision to require proof of specific intent; it supports no inference that Congress also intended to eliminate any general intent requirement and thereby make offenders strictly liable.

 To be sure, there are also inquiries for which the Court has said that sentencing provisions are different. In Harris v. United States, 536 U. S. 545, 557 (2002) (plurality opinion), and McMillan v. Pennsylvania, 477 U. S. 79, 87-88 (1986), the Court distinguished for purposes of constitu *582 tional analysis mandatory minimum sentencing schemes from offense elements and provisions that increase the statutory maximum sentence. I continue to agree with Justice Thomas’ compelling dissent in Harris, in which he rejected the distinction on the ground that mandatory minimum sentencing provisions have at least as significant an effect on a defendant’s liberty as additional convictions or statutory maximum provisions. 536 U. S., at 577-578. The logic of treating these provisions similarly is buttressed by our subsequent decision in United States v. Booker, 543 U. S. 220, 233-234 (2005).