ZINTER, Justice
(dissenting).
[¶ 35.] Were we considering this issue on a clean slate without legislative and judicial history, I would join the opinion of the Court. But as Chief Justice Gilbert-son explains,[10] there is substantial legislative history and case law involving SDCL 22-22-1. That history and case law demonstrate that the Legislature intended to make it a crime to sexually penetrate a victim objectively incapable[11] of giving *420 consent as a result of intoxication even if the defendant did not have knowledge of the victim’s incapacity.
[¶ 36.] “[I]t is widely understood that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer.” State v. Nagel, 279 N.W.2d 911, 915 (S.D.1979). “[T]he definition of the elements of a criminal offense is entrusted to the legislature, particularly ... crimes [that] are solely creatures of statute.” Staples v. United States, 511 U.S. 600, 604, 114 S.Ct. 1793, 1796, 128 L.Ed.2d 608 (1994). “Thus, ... determining the mental state required for commission of a [statutory] crime requires ‘construction of the statute and ... inference of the intent of [the legislature].’ ” Id. at 605, 114 S.Ct. at 1796-97 (quoting United States v. Balint, 258 U.S. 250, 253, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922)).
[¶ 37.] In this case, Chief Justice Gil-bertson explains how this Court has twice interpreted analogous language in other subsections of SDCL 22-22-1 to not require knowledge of incapacity with respect to designated classes of individuals with impairments. See Chief Justice Gilbert-son’s dissent ¶¶ 25-26.[12] In both cases this Court concluded that because the Legislature did not include mens rea language in the statute, the Legislature did not intend the statute to require knowledge of the victim’s incapacity. See id. The legislative decision was driven by the fact that the victims in the designated classes have diminished capacity, thus justifying the need for more protection than for those who can capably make informed decisions regarding consent to sexual penetration.
[¶ 38.] Today the Court changes its view of the Legislature’s intent regarding objectively incapacitated victims. The Court reads a knowledge element into SDCL 22-22-1(4) (victims incapacitated by alcohol) but not subsection (3) (victims incapacitated by other mental impairments). The Court does so because, in its view, in the latter case involving “mental incapacity,” the debilitating “conditionf] [is] readily apparent or reasonably discoverable.” Supra ¶ 14. I disagree. Human experience reflects that the degree of impairment resulting from mental disability and alcohol consumption falls along a broad continuum, and the actual state of incapacity is often not readily apparent to the lay observer. Thus, this is the type of case in which “the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide ‘that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.’ ” See Balint, 258 U.S. at 252, 42 S.Ct. at 302 (quoting Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 70, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910)). The majority concludes otherwise, noting that this is a serious felony, supra ¶ 15, and that offenses requiring no *421 mens rea are generally disfavored, supra ¶ 10 (quoting Staples, 511 U.S. at 606, 114 S.Ct. at 1797). But the majority overlooks the fact that the Supreme Court has specifically noted “sex offenses, such as rape” are one of the “few exceptions” to the common-law requirement of a culpable state of mind. Morissette v. United States, 342 U.S. 246, 251 & n. 8, 72 S.Ct. 240, 244 & n. 8, 96 L.Ed. 288 (1952).
[¶39.] Moreover, as Chief Justice Gil-bertson chronicles, the Legislature amended SDCL 22-22-1 on three occasions after we twice held that similar language in parallel subsections of the same statute do not include a mens rea element. See Chief Justice Gilbertson’s dissent ¶ 28. One legislative revision was a part of a comprehensive rewrite of the entire criminal code by eminent lawyers and legislators. See 2005 S.D. Sess. Laws ch. 120, § 390. Notwithstanding this comprehensive review of our criminal statutes, the Legislature left untouched this Court’s prior interpretations that there is no knowledge element in language like that found in SDCL 22-22-1(4). Under such circumstances, courts are in “no position” to consider policy arguments suggestive of different legislative intent because the legislature has, for a substantial period of time, amended the statute at issue but left a court’s “interpretation” of the statute “untouched.” Microsoft Corp. v. i4i Ltd. P’ship, — U.S. —, 131 S.Ct. 2238, 2252, 180 L.Ed.2d 131 (2011).
[¶ 40.] In light of SDCL 22-22-1’s judicial and legislative history, I am persuaded that the Legislature’s continued use of analogous language we have twice interpreted reflects no intent to change our interpretation. The majority’s contrary holding is based on its view that the Legislature has not expressed “clear intent to dispense with mens rea.” See supra ¶ 15. But this incorrectly presupposes that SDCL 22-22-1(4) previously contained a knowledge element. It did not.[13] SDCL 22-22-1(4) has never included language requiring “knowledge,” the word defined in SDCL 22-l-2(l)(e),[14] to describe the mens rea element when a knowledge requirement is intended in any criminal statute found in SDCL Title 22. Therefore, I cannot agree with the Court that the Legislature’s decision not to include the customarily used and legislatively prescribed language for including a knowledge element in a criminal statute, reflects legisla *422 tive intent to include that knowledge element in SDCL 22-22-1(4).
[¶ 41.] Today’s Court is also mistaken when it states that we will become the only court to hold that a jury “must disregard” the defendant’s state of mind (knowledge of incapacity) in cases like Jones’s simply because the victim “establishes that she drank too much to have given her consent.” See supra ¶ 13. Judge Jensen correctly explained that under the wording of the statute, “the question is [an] objective [one:] was [the victim] so intoxicated that she couldn’t give consent....” He therefore instructed that the jury would have to find that the victim was objectively incapable of giving consent by considering “all the circumstances.” See supra n. 11. This required the jury’s consideration of reasonable, good-faith perceptions of all witnesses to the victim’s state of intoxication, including that of the defendant. Thus, the jury could not disregard Jones’s testimony that he did not know the victim was intoxicated or incapable of consent when he had sex with her. Indeed, Jones raised this point in his testimony, in his examination of his witnesses, in his cross-examination of the State’s witnesses, and in his closing argument.
[¶ 42.] Finally, to affirm the circuit court, “we [would not be] marking] South Dakota as the only jurisdiction to hold” that a knowledge element is not included in the offense of rape of a victim who is objectively incapable of consent due to incapacitation by alcohol. Cf. supra ¶ 13 (emphasis added). The Court references four other states. But in each of those states the legislature enacted a statute explicitly requiring that the perpetrator know or reasonably should know of the victim’s inability to consent. See supra n. 5 (citing statutes from four other states). Therefore, this is not a matter in which we must issue a holding adopting our view of the wisdom of having a knowledge element in this type of offense. The South Dakota Legislature made that decision when it differentiated SDCL 22-22-1(4) from the statutes adopted in the four states referenced by the majority.
[¶ 43.] For all of the foregoing reasons, I respectfully dissent. Based on our judicial and legislative history, I would apply the plain language interpretation of SDCL 22-22-1(4). And consistent with our two prior cases, I would restate that the plain language we interpret today contains no knowledge element.

. I join all of Chief Justice Gilbertson’s opinion except ¶ 30.

. The circuit court required the State to prove that the victim was objectively incapable of consenting. The court instructed: Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication. In determining whether the victim was incapable of giving consent because of intoxication you must consider all *420 the circumstances in determining whether the victim’s intoxication rendered her unable to exercise reasonable judgment in the process of forming mental or intellectual decisions and of discerning or comparing all the circumstances present at the time. It is not enough that the victim is intoxicated to some degree, or that the intoxication reduces the victim’s sexual inhibitions, in order to establish that the level of the victim’s intoxication deprives the victim of the legal capacity to consent to the sexual act.

. The most striking example is State v. Schuster, 502 N.W.2d 565, 569 (S.D.1993). In that case we held that a defendant need not have knowledge that a mentally incapacitated person deemed incapable of giving consent was actually incapable under SDCL 22-22-1(2). SDCL 22-22-1(4) also involves victims with diminished mental capacity. As is explained in ¶ 38, infra, there is no basis to distinguish Schuster.

. The Court suggests that the legislatively-removed element previously requiring that the accused or his agent administer the alcohol "presupposfed] that the accused knew or reasonably should have known of the victim's incapacitated state.” Supra ¶ 9 (emphasis added). On the contrary, the act of providing another person beverage alcohol does not necessarily reflect how the recipient will process that alcohol and how other external factors will ultimately influence the extent of any resulting incapacitation. Thus, the statute’s prior administration element did not presuppose that the accused would also actually know of the victim’s ultimate resulting degree of incapacitation. The now repealed administration element denoted responsibility for furnishing the alcohol rather than knowledge of the degree of incapacity that actually resulted. For that reason, the now repealed administration element did not presuppose that the accused also knew of the victim’s later ability to consent. Moreover, to reach its result, the majority must employ a new rule of statutory construction that the Legislature’s repeal of one element of a statute reflects legislative intent to retain another element that had never been mentioned in the statute. Canons of statutory construction are loose enough without adding a rule that has such a tenuous tie to logic.

. SDCL 22-1-2(1) defines the various types of mens rea necessary for acts to constitute the criminal offenses in SDCL Title 22. “ ‘[Kjnowledge, knowingly,’ and all derivatives thereof" are specifically defined in SDCL 22-l-2(l)(c).