<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4136**

———————

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

JAMES EDWARD GOFF,

　　　　　Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.   James C. Turk, Senior District Judge.   (1:11-cr-00025-JCT-PMS-1)

———————

Argued:  December 7, 2012　　　Decided:  February 11, 2013

———————

Before NIEMEYER, KING, and FLOYD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:**   Brian Jackson Beck, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.   Albert Pilavin Mayer, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.   **ON BRIEF:**  Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, for Appellant.   Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, Zachary T. Lee, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On October 17, 2010, Appellant James Edward Goff, a convicted felon and resident of Tazewell County, Virginia, arrived at his mother's home in Richlands, Virginia. Goff unloaded three cardboard boxes from his vehicle and cautiously carried them into a shed at the back of his mother's property. The shed was a dilapidated, wooden structure with a tin roof and at least one broken window. The property abutted William Cole, Jr.'s property, and when Goff arrived, Cole was on his back porch grilling steaks. Cole observed Goff's transfer of the boxes and noticed that one of the boxes had wires the size of an "ink pen filler" stringing out of its top.

The next day, Cole, believing that the three boxes contained blasting caps, peered through the window of the shed, observed three boxes of Hercules brand static resistant blasting caps, and called 911. When officers arrived and entered the shed, they confirmed that the boxes did indeed contain blasting caps.

The government subsequently charged Goff with knowingly and intentionally possessing blasting cap explosives as a convicted felon, in violation of 18 U.S.C. § 842(i)(1), and knowingly storing blasting cap explosives in a manner not in conformity with regulations promulgated by the Attorney General pursuant to 18 U.S.C. § 847, in violation of 18 U.S.C. § 842(j). On

2

November 7, 2011, a jury convicted Goff of both counts. Post-trial, Goff filed a motion seeking judgment of acquittal on both counts or, in the alternative, a new trial on any remaining count. The district court denied the motion in its entirety. Goff now appeals this denial, and we affirm.

## I.

We first address the district court's denial of Goff's motion for judgment of acquittal, reviewing such denial de novo. United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011). Three issues are before us: (1) whether the government presented sufficient evidence to convict Goff of both counts, (2) whether Goff's indictment on Count Two adequately informed him of the nature of the charge, and (3) whether the statutory regulations under which Goff was charged on Count Two are unconstitutionally vague.

## A.

Goff alleges that the government failed to present sufficient evidence to convict him of his charges because it failed to prove "an essential element" of each count—namely, "that the items recovered from the shed met the definition of an explosive."

3

Count One of Goff's indictment charged him with violating 18 U.S.C. § 842(i)(1), which makes it unlawful for a felon "to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce." Count Two charged him with violating 18 U.S.C. § 842(j), which makes it unlawful for "any person to store any explosive material in a manner not in conformity with regulations promulgated by the Attorney General."

Per 18 U.S.C. § 841(d), an "explosive" is "any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion." 18 U.S.C. § 841(d). "[T]he term includes, but is not limited to, dynamite and other high explosives . . . [and] detonators . . . ." Id. Further, a "detonator" is "any device containing a detonating charge that is used for initiating detonation in an explosive." § 841(f). This term "includes, but is not limited to, electric blasting caps of instantaneous and delay types, blasting caps for use with safety fuses[,] and detonating-cord delay connectors." Id.

Goff contends that the government failed to prove either charged count because it did not present evidence that his blasting caps "contained a detonating charge." In effect, Goff maintains that the government proved only that he possessed blasting caps, not that the blasting caps would or could explode. And without such proof, Goff argues, the government

failed to demonstrate that the caps were detonators or explosives. We disagree.

In United States v. Markey, 393 F.3d 1132 (10th Cir. 2004), the Tenth Circuit addressed an issue similar to the one that Goff raises here. In Markey, the government charged the defendant with unlawful possession of dynamite, and the defendant argued that because he reasonably believed the dynamite in his possession was incapable of exploding, he did not knowingly possess explosives as required for a conviction pursuant to 18 U.S.C. § 842(i)(1). Markey, 393 F.3d at 1136. The Tenth Circuit rejected the defendant's argument, however, reasoning that because the definition of "explosive" includes the words "primary or common purpose," § 841(d), the operative inquiry regarding proof involves "a device's intended and usual use—not its actual capability," Id. Thus, it held that the government "need not show that a device is actually able to explode to prove that a defendant knowingly possesses an explosive under § 842(i)(1)." Id. Rather, "it need only prove that the defendant knew he possessed dynamite or other chemical compound, mixture, or device that was primarily designed to function by explosion." Id.

Here, the district court relied on Markey to deny Goff's motion for judgment of acquittal, but Goff contends that his case is distinguishable from Markey because in Markey the

5

general definition of "explosive" applied, and here, the more specific definition of "detonator" applies. He notes that the definition of "detonator" requires a device to "contain[] a detonating charge."

Goff is correct that the definition of "detonator" includes the phrase "containing a detonating charge," but the application of the statute that Goff presses is incompatible with the statute as a whole. Detonators are a type of explosive, see § 841(d), and explosives are devices that "function by explosion," not just devices that contain explosive capabilities, see Markey 393 F.3d at 1136. We decline to single out one type of explosive (i.e., detonators) by holding that they can be classified as such only when retaining an ability to detonate. Such a ruling would be absurd and contrary to Congress's apparent intent. Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

We cannot believe that Congress set out to police a myriad of dangerous explosives regardless of their explosive power but considered the policing of detonators necessary only when they actually possess an ability to detonate. Nor are we ready to require that the government discharge stashes of recovered

6

blasting caps so that they can effectively prosecute felons who store these caps. Such a ruling would be ridiculous indeed. Thus, because we cannot countenance the statutory construction that Goff proposes, we affirm the district court's decision to deny his motion for judgment of acquittal on that basis.

B.

Goff next contends that Count Two of his indictment lacked sufficient specificity. As noted above, Count Two charged Goff with violating 18 U.S.C. § 842(j), which states, "It shall be unlawful for any person to store any explosive material in a manner not in conformity with regulations promulgated by the Attorney General." Goff's indictment for Count Two reads,

> 1. On or about October 18, 2010, in the Western District of Virginia and elsewhere, JAMES EDWARD GOFF knowingly stored explosives in a manner not in conformity with regulations promulgated by the Attorney General pursuant to Title 18, United States Code, Section 847, namely, 3 boxes of Hercules Superdet static-resistant delay electric blasting caps.

> 2. All in violation of Title 18, United States Code, Section 842(j).

Goff avers that his indictment's "bare allegation of regulatory non-compliance without either a reference to a particular regulation, or a factual recitation of the alleged violation conduct, was inadequate under the Fifth and Sixth Amendments" and Federal Rule of Criminal Procedure 7(c).

7

The Fifth and Sixth Amendments form the basis of our insistence that the government include a level of specificity in its indictments. The Fifth Amendment prohibits the government from prosecuting a defendant for an infamous crime (i.e., crimes punishable by imprisonment for more than one year, see Green v. United States, 356 U.S. 165, 183 (1958), overruled on other grounds by Bloom v. Illinois, 391 U.S. 194 (1968)), except "on a presentment or indictment of a Grand Jury," U.S. Const. amend. V. The Sixth Amendment provides a defendant the right "to be informed of the nature and cause of the accusation" against him, U.S. Const. amend. VI; see also Fed. R. Crim. P. 7(c) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . . For each count, the indictment . . . must give the official or customary citation of the statute . . . or other provision of law that the defendant is alleged to have violated."). In short, to ensure constitutional guarantees are met, "[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992).

Goff's indictment was sufficient to afford him constitutional protection. The indictment included the elements

of his offense—namely, "knowingly stor[ing] explosives in a manner not in conformity with regulations promulgated by the Attorney General," and notified him of his charge—violating 18 U.S.C. § 847—such that he could prepare an adequate defense and sufficiently plead double jeopardy if prosecuted a second time for the same crime. We recognize that the government's indictment fails to include much detail. Nevertheless, we decline to adopt Goff's view that "the allegation of regulatory non-compliance was completely unclear." Our review of the Attorney General's regulations indicates that the provisions addressing the storage of explosives are few and certainly not so extensive as to deny Goff the ability to craft an adequate defense to his charge. Thus, we again affirm the district court's denial of Goff's motion for judgment of acquittal as to this issue.

C.

Next, Goff maintains that the Attorney General's storage regulations are unconstitutionally vague. The Attorney General's regulations regarding the storage of explosives are found in 27 C.F.R. § 555.202–203. Section 555.202 delineates the classes of explosives and reads:

> For purposes of this part, there are three classes of explosive materials. These classes,

9

together with the description of explosive materials comprising each class, are as follows:

(a) High explosives. Explosive materials which can be caused to detonate by means of a blasting cap when unconfined, (for example, dynamite, flash powders, and bulk salutes). See also § 555.201(e).

(b) Low explosives. Explosive materials which can be caused to deflagrate when confined (for example, black powder, safety fuses, igniters, igniter cords, fuse lighters, and "display fireworks" classified as UN0333, UN0334, or UN0335 by the U.S. Department of Transportation regulations at 49 CFR 172.101, except for bulk salutes).

(c) Blasting agents. (For example, ammonium nitrate-fuel oil and certain water-gels (see also § 555.11)).

27 C.F.R. § 555.202.  In turn, § 555.203 outlines the method of storage for each explosive class:

For purposes of this part, there are five types of magazines. These types, together with the classes of explosive materials, as defined in § 555.202, which will be stored in them, are as follows:

(a) Type 1 magazines. Permanent magazines for the storage of high explosives, subject to the limitations prescribed by §§ 555.206 and 555.213. Other classes of explosive materials may also be stored in type 1 magazines.

(b) Type 2 magazines. Mobile and portable indoor and outdoor magazines for the storage of high explosives, subject to the limitations prescribed by §§ 555.206, 555.208(b), and 555.213. Other classes of explosive materials may also be stored in type 2 magazines.

(c) Type 3 magazines. Portable outdoor magazines for the temporary storage of high explosives while attended (for example, a "day-box"), subject to the limitations prescribed by §§ 555.206 and 555.213. Other classes of explosive materials may also be stored in type 3 magazines.

10

(d) Type 4 magazines. Magazines for the storage of low explosives, subject to the limitations prescribed by §§ 555.206(b), 555.210(b), and 555.213. Blasting agents may be stored in type 4 magazines, subject to the limitations prescribed by §§ 555.206(c), 555.211(b), and 555.213. Detonators that will not mass detonate may also be stored in type 4 magazines, subject to the limitations prescribed by §§ 555.206(a), 555.210(b), and 555.213.

(e) Type 5 magazines. Magazines for the storage of blasting agents, subject to the limitations prescribed by §§ 555.206(c), 555.211(b), and 555.213.

§ 555.203. Finally, §§ 555.207–211 outline the construction guidelines for each type of magazine.

"A statute is impermissibly vague if it either (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" United States v. Shrader, 675 F.3d 300, 310 (4th Cir. 2012) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)). Notably, in applying these standards, we have never required that a statute speak with "perfect clarity and precise guidance." Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989). Instead, we ask simply whether a statute's provisions are articulated "in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 579 (1973).

11

We cannot deny that under certain circumstances, the Attorney General's regulations might cause an ordinary person exercising ordinary common sense some confusion. Nevertheless, in this case, we need not engage in a lengthy discussion of whether the guidelines were sufficiently clear. Goff stored his blasting caps in cardboard boxes inside a dilapidated shed on his mother's property. As explained below, a cursory read of the Attorney General's regulations would have informed Goff that storing blasting caps in this manner was woefully inadequate.

Assuming, without deciding, that under § 555.202, Goff's blasting caps qualified as "low explosives" (the type that requires the least stringent storage), he should have stored them in a type 4 magazine. And we need not delve deeply into the parameters of type 4 magazines to determine that Goff did not comply. Section 555.210 describes both indoor and outdoor type 4 magazines as "fire-resistant" and "theft-resistant." Needless to say, Goff's mother's shed, a "board structure" with a tin roof and at least one broken window, does not qualify as a type 4 magazine. Accordingly, without further analysis, we can affirm the district court's denial of Goff's motion for judgment of acquittal on this basis as well.

II.

Next, we address the district court's denial of Goff's motion for a new trial. We review the denial of such motions for abuse of discretion. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). Goff founded his request for a new trial on the district court's failure to give jury instructions that he requested. Specifically, he avowed that the court failed to properly instruct the jury on the statutory elements of his charges. "[W]e conduct a de novo review of any claim that jury instructions incorrectly stated the law." United States v. Mouzone, 687 F.3d 207, 217 (4th Cir. 2012).

A.

With respect to Count One, the district court instructed the jury that "[t]o find the defendant guilty of this charge, the government must prove . . . that the defendant knowingly and intentionally possessed explosives, as described in the indictment." The court further instructed that "[t]he word 'knowingly,' as used in [C]ount [O]ne of the indictment, means that the defendant acted intentionally and voluntarily and not by accident, mistake, or carelessness." Goff contends here, as he did in his motion, that the court should have instructed that the government had to prove he knew he possessed items that qualified as explosives or detonators under the statute. Thus,

13

the crux of Goff's concern is the mental state required for a violation of 18 U.S.C. § 842(i)(1).

We determine the mental state required for the commission of a federal crime by examining the construction of the relevant statute and Congress's intent in enacting the statute. United States v. Balint, 258 U.S. 250, 252–53 (1922). Where, as here, a statute is silent as to a required mental state, we must determine whether to "construe the statute in light of the background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded" or to categorize the regulated conduct as a public welfare offense. Staples v. United States, 511 U.S. 600, 605–06 (1994) (emphasis omitted) (citation omitted). Public welfare offenses require no mens rea and are a means by which Congress "impose[s] a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." Id. at 606.

There is wisdom in limiting the catalogue of public welfare offenses. See id. at 607. Thus, the Supreme Court has generally confined such offenses to statutes that "regulate potentially harmful or injurious items." Id. Indeed, imputing strict liability to defendants who possess dangerous objects makes good sense:

14

> [A]s long as a defendant knows that he is dealing with a dangerous device of a character that places him "in responsible relation to a public danger," he should be alerted to the probability of strict regulation, and . . . [should bear] the burden [of] . . . "ascertain[ing] at his peril whether [his conduct] comes within the inhibition of the statute."

Id. (fifth alteration in original) (citation omitted) (quoting United States v. Dotterweich, 320 U.S. 277, 281 (1943); Balint, 258 U.S. at 254).

Here, Goff primarily relies on the Supreme Court's decision in Staples v. United States, where it declined to categorize a violation of 26 U.S.C. § 5861(d), which prohibits the possession of an unregistered firearm (as defined in § 5845), as a public welfare offense. See 511 U.S. at 619. The Court held that the government could not simply prove that the defendant knowingly possessed a dangerous weapon. Id. Instead, it had to prove that the defendant knew his weapon fit within the statutory definition of a firearm such that it had to be registered. Id. Goff contends that the statute he violated is similar to the statute in Staples and that the government needed to prove that he knew his blasting caps qualified as explosives or detonators as defined by 26 U.S.C. § 842. We disagree.

The reasoning that supported the Court's treatment of the statute in Staples does not neatly apply to the statute at issue here. In Staples, the statute at issue regulated private gun ownership, an activity that is "widespread" and that has been

15

long-recognized as lawful. Id. at 610. Such is not the case with explosives and detonators. Moreover, whereas "[g]uns in general are not 'deleterious devices or products or obnoxious waste materials' that put their owners on notice that they stand 'in responsible relation to a public danger,'" Staples, 511 U.S. at 610-11 (citation omitted) (quoting United States v. Int'l Minerals & Chem. Corp., 402 U.S. 558, 565 (1971); Dotterweich, 320 U.S. at 281), the same cannot be said for blasting caps. Thus, we conclude that Goff had sufficient notice of "the probability of strict regulation," Staples, 511 U.S. at 607, and that he was responsible for "ascertain[ing] at his peril whether [his conduct was] within the inhibition of the statute," Balint, 258 U.S. at 254. Accordingly, we hold that the district court did not err in instructing the jury that the government needed to prove only that Goff knew he possessed blasting caps.

B.

Similar to his argument regarding the mens rea requirement for Count One, Goff argues that on Count Two, the district court erred in failing to instruct the jury that the government had to prove Goff knew the manner in which he stored the blasting caps was illegal and unauthorized. Again, Goff seeks to use Staples to his advantage, and, again, we hold that the case is inapposite. By possessing dangerous objects such as blasting

16

caps, Goff had ample notice that his conduct was regulated, and, therefore, the burden of ascertaining and complying with the Attorney General's storage regulations was his to bear. Thus, the district court properly declined to instruct the jury that the government did not need to prove that Goff knew the manner in which he stored the blasting caps was illegal.

In sum, we conclude that the district court properly instructed the jury on both counts and did not err in denying Goff's motion for a new trial based on faulty jury instructions.

III.

We have reviewed Goff's contentions that the district court improperly denied his motion for judgment of acquittal or, in the alternative, for a new trial, and we find his arguments lacking in merit. Therefore, we affirm the judgment of the district court.

AFFIRMED

17