PARIENTE, J.,
concurring in result.
Forty-eight states, either by statute or judicial decision, require that knowledge of a controlled substance — mens rea (“guilty mind”) — be an element of a criminal narcotics offense.[1] Despite the Legislature’s *424 elimination of knowledge of the illicit nature of the controlled substance as an element of a drug-related offense, conviction for such an offense under the Florida Comprehensive Drug Abuse Prevention Act (Act) can subject a defendant to staggering penalties, ranging from punishment of up to fifteen years’ imprisonment to life in prison for recidivists.
I share Justice Perry’s concerns about the Act’s harsh application to a potentially blameless defendant, but in my view, these legitimate concerns do not render the Act facially unconstitutional; that is, under no set of circumstances can the Act be constitutionally applied. Although I concur in the result reached by the majority, I write separately to emphasize the very narrow basis for my concurrence.
The Act is facially constitutional only because it (1) continues to require the State to prove that a defendant had knowledge of the presence of the controlled substance as an element of drug-related offenses and (2) expressly authorizes a defendant to assert lack of knowledge of the illicit nature of the controlled substance as an affirmative defense. Both aspects reduce the likelihood that a defendant will be punished for what could otherwise be considered innocent possession and save this Act from facial invalidity. However, because of genuine constitutional concerns that notwithstanding the availability of an affirmative defense, the Act could be unconstitutionally applied to a speeific defendant by criminalizing innocent conduct while subjecting him or her to a substantial term of imprisonment, I would not foreclose an individual defendant from raising an as-applied challenge to the Act on due process grounds. In short, it would be difficult to uphold the Act, which codifies felony offenses with substantial penalties, against a constitutional attack when mounted by a person who possessed a controlled substance unwittingly or without knowledge of its illicit nature.
Being one among a distinct minority of states to eliminate an element traditionally included in criminal offenses does not, of course, render Florida’s drug law unconstitutional. After all, this Court’s task is not to decide whether the Legislature has made a wise choice — or even one in keeping with the overwhelming majority of jurisdictions — when defining the elements of drug-related offenses. Rather, we must determine whether the Legislature deprived defendants of due process of law under the United States and Florida Constitutions by omitting knowledge of the illicit nature of a controlled substance as an element of the offense.[2] When reviewing the constitutional validity of a statute, we must remain mindful of the United States Supreme Court’s consistent recital of the notion that the “existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American *425 criminal jurisprudence.”[3] The inclusion of mens rea as an essential element of an offense is a mechanism that safeguards against the criminalization of innocent conduct. As this Court has recognized, “scienter is often necessary to comport with due process requirements,” and the elimination of this element “from a criminal statute must be done within constitutional constraints.” State v. Giorgetti, 868 So.2d 512, 518, 520 (Fla.2004). Therefore, laws that dispense with the requirement of mens rea require very close judicial scrutiny to ensure their compliance with what the Constitution commands.
Initially, I recognize, as does the majority, that the Legislature’s 2002 amendment to the Act abrogated only the requirement that the State prove a defendant had knowledge of the illicit nature of the controlled substance. See ch.2002-258, § 1, Laws of Fla. (codified at § 893.101(2), Fla. Stat. (2002)). Significantly, the State still bears the burden of proving a defendant’s knowledge of presence in order to establish a defendant’s actual or constructive possession of the controlled substance. See Maestas v. State, 76 So.3d 991, 994-95 (Fla. 4th DCA 2011). Therefore, I agree that “the statute does not punish strictly an unknowing possession or delivery,” id. at 995, thereby saving the Act from being unconstitutionally applied to defendants where knowledge of the presence of the substance is unknown. Cf. United States v. Garrett, 984 F.2d 1402, 1411 (5th Cir.1993) (noting that “a serious due process problem would be raised by application of [a statute criminalizing gun possession on an aircraft], which carries fairly substantial penalties, to someone who did not know and had no reason to know that he was carrying a weapon”).
On the other hand, I disagree with the majority’s broad pronouncement that due process will not ordinarily preclude the Legislature from creating criminal offenses that dispense with the mens rea requirement. See majority op. at 417. The majority’s analysis upholding the constitutionality of the Act is flawed because it appears to be based on whether the Legislature has a rational basis for imposing criminal liability. In fact, there are constitutional limitations on the Legislature’s ability to create crimes that dispense with mens rea and in effect criminalize actions that could be characterized as innocent conduct where such crimes carry substantial penalties.
The majority’s reliance on several cases from the United States Supreme Court to reach that broad pronouncement is misplaced and fails to discuss the fact that courts and commentators have expressed serious concerns about the constitutionality of criminal statutes that eliminate mens rea as an element of a criminal offense.
The majority affords great significance to the Supreme Court’s 1922 decision in United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), as standing for the proposition that due process does not, as a general matter, preclude the creation of offenses lacking a guilty knowledge element. See majority op. at 417-18. But unlike the drug law at issue here criminalizing clandestine drug deals, the public welfare Narcotic Act of 1914 under scrutiny in Balint was a “taxing act” that regulated and taxed the legal distribution of drugs to secure “a close supervision of the business of dealing in these dangerous *426 drugs.” 258 U.S. at 253-54, 42 S.Ct. 301. There, the defendants knew they were distributing drugs (a derivative of opium and coca leaves), they just did not know that the substances at issue were regulated as narcotics and had to be distributed pursuant to a written order form. See id. at 251, 42 S.Ct. 301. Knowledge that the substances seeking to be distributed were in fact regulated was not an element of the offense. See id.; see also Staples v. United States, 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (acknowledging that the Narcotic Act discussed in Balint “required proof only that the defendant knew he was selling drugs, not that he knew that the specific items he had sold were ‘narcotics’ within the ambit of the statute”).
The Supreme Court upheld the Narcotic Act, rejecting the argument that “punishment of a person for an act in violation of law when ignorant of the facts making it so” violated due process. Balint, 258 U.S. at 252, 42 S.Ct. 301. The Court in Balint reasoned that the act was much more similar to “regulatory measures” designed for “social betterment” than to those designed for “punishment.” Id. Concluding that knowledge was not an aspect of this element of the offense, the Court held that the “manifest purpose” of the act was “to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him,” using a criminal penalty merely “to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic.” Id. at 254, 42 S.Ct. 301.
Notably, when examining the statute in Balint contextually, at least one court has more recently observed that Balint no longer has any application as a case about strict liability and narcotics given the serious nature of contemporary drug laws:
[T]he statute must be understood in context. It predated the era during which all possession and sale of drugs came to be regarded as serious crimes. Aside from its penalty, it fairly can be characterized as a regulation. It required manufacturers and distributors of certain narcotics to register with the IRS, pay a special tax of one dollar per year and record all transactions on forms provided by the IRS. [Narcotic Act of 1914, Pub.L. No. 223,] §§ 1-3 and 8[, 38 Stat. 784 (1914) ].
As a case about strict liability and narcotics, Balint has no application today. Prior to the [Narcotic] Act narcotics had been freely available without prescription. This change by tax statute was a first modest transitional step towards the present complex and serious criminal statutes dealing with narcotics offenses. They have come to be treated as among the most serious of crimes in the federal criminal code. See, e.g., 21 U.S.C. §§ 960 (mandatory minimum sentences as high as 10 years for certain drug offenses); 848(e) (possible sentence of death for drug offenses in which killing results).
United States v. Cordoba-Hincapie, 825 F.Supp. 485, 507 (E.D.N.Y.1993).
The majority similarly relies upon United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), and United States v. International Minerals and Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), for the conclusion that the Supreme Court has rejected the view that due process mandates that a mens rea element be read into public safety statutes regulating the possession of unregistered firearms and the shipping of corrosive liquids. However, the matters involved in Freed and International Min *427 erais — and even Balint — placed those cases squarely within the realm of traditional public welfare offenses regulating conduct of a particular nature.
By contrast, in Staples, another decision cited by the majority, the Supreme Court declined to apply the public welfare rationale to the statute under review due in part to the fact that it imposed a penalty of up to ten years’ imprisonment for a felony offense. See 511 U.S. at 616-18, 114 S.Ct. 1793. Indeed, the Court in Staples specifically distinguished “the cases that first defined the concept of the public welfare offense,” which “almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary.” Id. at 616, 114 S.Ct. 1793.
Unlike the possession or delivery of substances one does not know to be illicit (an innocent act), certain items of property regulated by public welfare statutes, such as unlicensed hand grenades (Freed), corrosive liquids (International Minerals), and legalized narcotics (Balint), by their very nature suggest that a reasonable person should know the item is subject to public regulation and may seriously threaten the community’s health or safety. See Liparota v. United States, 471 U.S. 419, 432-33, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (describing “public welfare offenses” as rendering “criminal a type of conduct that a reasonable person should know is subject to stringent public regulation or may seriously threaten the community’s health or safety” and citing Freed, International Materials, and Balint for support).
Accordingly, Freed, International Minerals, and Balint are of limited prece-dential value because the Act at issue in the present case could not, in my view, be deemed a public welfare statute as that term has been used and imposes substantial felony penalties for drug-related offenses where the accused might be unaware of the illicit nature of the substance of which he or she is in possession. See Cordobar-Hincapie, 825 F.Supp. at 497 (concluding that modern, anti-drug offenses could no longer be characterized as public welfare offenses); Dawkins, 547 A.2d at 1047 (concluding that the prohibition against possessing a controlled dangerous substance, such as heroin or cocaine, “is regarded as a most serious offense,” the purpose of which was not to regulate conduct but to punish and deter behavior). But see United States v. Bunton, No. 8:10-cr-327-T-30EAJ, 2011 WL 5080307, at *8 (M.D.Fla. Oct. 26, 2011) (concluding that because the criminal offenses enumerated in Florida’s drug law are public welfare offenses, mens rea was not a required element).
I recognize that “[tjhere is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.” Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). This discretion is not unbridled, however. The complementary principle is that legislative bodies must “act within any applicable constitutional constraints” when defining the elements of an offense. Liparota, 471 U.S. at 424 n. 6, 105 S.Ct. 2084; see also Giorgetti, 868 So.2d at 518, 520.
Although neither the United States Supreme Court nor any other court “has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not,” Staples, 511 U.S. at 620, 114 S.Ct. 1793 (quoting Morissette v. United States, 342 U.S. 246, 260, 72 S.Ct. 240, 96 L.Ed. 288 (1952)), the requirement that an accused act with a culpable mental state is an *428 axiom of criminal jurisprudence that must be emphasized. As Justice Jackson stated when writing for the Supreme Court in Morissette:
The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child’s familiar exculpatory ‘But I didn’t mean to,’ and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone’s sweeping statement that to constitute any crime there must first be a ‘vicious will.’ Common-law commentators of the Nineteenth Century early pronounced the same principle....
342 U.S. at 250-51, 72 S.Ct. 240 (footnotes omitted).
Since Morissette, the Supreme Court has oft repeated that the “existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.” U.S. Gypsum Co., 438 U.S. at 436, 98 S.Ct. 2864 (quoting Dennis, 341 U.S. at 500, 71 S.Ct. 857); see also Staples, 511 U.S. at 605, 114
S.Ct. 1793 (reciting the same). And in applying this principle, the Supreme Court has likewise recognized that offenses dispensing with mens rea are generally disfavored. Staples, 511 U.S. at 606, 114 S.Ct. 1793.[4] Therefore, the Supreme Court’s reluctance to devise a precise line does not mean that limitations do not exist where the criminal laws of a state are non-regulatory in nature and have the potential to subject a defendant to substantial punishment for conduct that might be entirely innocent or where the defendant lacks culpability.
In fact, some state courts over the years have pointed out the constitutional dimension of mens rea when confronting drug laws similar to the one the Court addresses in this case, stressing that due process would prevent the sanctioning of blameless conduct. See, e.g., State v. Brown, 389 So.2d 48, 50-51 (La.1980) (declaring a portion of a state statute criminalizing the “unknowing” possession of a dangerous controlled substance unconstitutional because there could be a circumstance where a conviction would result notwithstanding the accused never being aware of the nature of the substance); Walker v. State, 356 So.2d 672, 674 (Ala.1977) (reading into the state’s controlled substances statute a knowledge component because “the desirability of efficient enforcement of regulatory statutes must give way to the traditional requirement that criminal sanction be imposed only for blameworthy conduct in order to comply with the requirements of due process of law”).[5]
*429 Absent from the statutes addressed by the courts in Brown and Walker, however, was the availability of any affirmative defense like the one available under Florida’s drug law. Notably, the two states that have gone further than Florida by eliminating knowledge, including knowledge of possession, entirely from the offense of possession of a controlled substance— Washington and North Dakota — have recognized that allowing a defendant to raise the affirmative defense of lack of knowledge spares those state statutes from constitutional attack. See City of Kennewick v. Day, 142 Wash.2d 1, 11 P.3d 304, 309 (2000) (observing that the “unwitting possession defense is unique to Washington and North Dakota”).
Before the North Dakota law was amended to include willfulness,[6] the state supreme court held that the pre-amended version of North Dakota’s controlled substance law, which prohibited possession of a controlled substance with intent to deliver, was constitutional despite imposing strict liability. See State v. Michlitsch, 438 N.W.2d 175, 178 (N.D.1989). In adhering to this conclusion that the Legislature intended the possession of a controlled substance and possession with intent to deliver to constitute strict liability offenses, the court did note that as applied, “it would be difficult to sustain these statutory provisions, the violation of which are punishable as felonies in many circumstances, against a constitutional attack when mounted by a person who possessed the controlled substance unwittingly.” Id. (emphasis added). Thus, the court in Michlitsch held that an affirmative defense that the defendant unwittingly or unknowingly possessed the controlled substance was “a logical accommodation which recognizes the reasons for both the legislative designation of the crimes as strict liability offenses and the constitutional interests of the accused.” Id.; see also State v. Holte, 631 N.W.2d 595, 599 (N.D.2001) (holding that because it was possible for a person to be convicted of the strict liability offense of violating a domestic violence protection order based on innocent or mistaken conduct, a Michlitsch-type affirmative defense instruction could be given under appropriate circumstances).
Like the Supreme Court of North Dakota, the Supreme Court of Washington has rejected the argument that a mens rea element must be read into- that state’s drug possession statute. See Bradshaw, 98 P.3d at 1195. However, as in North Dakota, in Washington unwitting possession is an affirmative defense in simple possession cases because such a defense “ameliorates the harshness of the almost strict criminal liability [the] law imposes for unauthorized possession of a controlled substance.” State v. Cleppe, 96 Wash.2d 373, 635 P.2d 435, 439 (1981) (reaffirmed by Bradshaw, 98 P.3d at 1195). The affirmative defense in Washington “is sup *430 ported by one of two alternative showings: (1) that the defendant did not know he was in possession of the controlled substance; or (2) that the defendant did not know the nature of the substance he possessed.” Day, 11 P.3d at 310 (citations omitted).
I agree with the reasoning of the North Dakota and Washington state courts. As has been articulated, it would be “fundamentally unsound to convict a defendant for a crime involving a substantial term of imprisonment without giving him the opportunity to prove that his action was due to an honest and reasonable mistake of fact or that he acted without guilty intent.” LaFave, supra § 5.5(d) at 393 n. 51 (quoting Francis B. Sayre, Public Welfare Offenses, 33 Colum. L.Rev. 55, 82 (1933)).
An affirmative defense that affords the defendant with an opportunity to place his or her culpability at issue hampers the concerns of innocent criminalization and a violation of due process. Similar to the judicially recognized affirmative defenses of mistake of fact in North Dakota and Washington, where the accused believes he or she possesses or is delivering an innocuous substance in Florida, the accused may — but is not required to — assert the affirmative defense enumerated under section 893.101(2), Florida Statutes (2011), of “lack of knowledge of the illicit nature” of the controlled substance. Moreover, when this defense is asserted, the trial court must then instruct the jurors to find the defendant “not guilty” if they “have a reasonable doubt on the question of whether [the defendant] knew of the illicit nature of the controlled substance.” Fla. Std. Jury Instr. (Crim.) 25.2. That is, if the defense is raised, the State has the burden to overcome the defense by proving beyond a reasonable doubt that the defendant knew of the illicit nature of the substance.
Therefore, although the Act is not a public welfare statute like the statutes reviewed in Balint, Freed, or International Minerals, and it imposes harsh penalties, this statutorily authorized affirmative defense, when read in conjunction with the applicable jury instruction, ameliorates the concern that the statute criminalizes truly innocent conduct and saves the Act from a facial due process challenge.[7] In short, the Act does not codify true strict liability crimes because the Legislature has expressly allowed the defendant to place his or her lack of knowledge of the illicit nature of the substance at issue as a complete defense.
But, there is an important caveat. Given that the jury is also permitted to presume the defendant was aware of the illicit nature of the controlled substance just because he or she was in possession of that substance, even when the affirmative defense is raised, see Fla. Std. Jury Instr. (Crim.) 25.2, I do not foreclose the possibility for a defendant to claim on an as- *431 applied basis that his or her innocent possession of an illicit substance was criminalized. A serious due process problem would be raised by application of the Act to this latter scenario. Cf. Liparota, 471 U.S. at 426, 105 S.Ct. 2084 (construing a statute to include mens rea, noting that “to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct”).
In sum, I concur in upholding the statute against a facial challenge because the Act continues to require the State to prove knowledge of presence of the illicit controlled substance and authorizes an affirmative defense of lack of knowledge of the illicit nature of that substance. However, I would not foreclose an as-applied challenge to the Act. on due process grounds.

. A national survey reveals that Florida’s drug law is clearly out of the mainstream. Except for Washington, which eliminates mens rea for simple drug possession offenses, and now Florida, the remaining forty-eight states require knowledge to be an element of a narcotics possession law, either by statute or by judicial decision. See State v. Bradshaw, 152 Wash.2d 528, 98 P.3d 1190, 1196 (2004) (Sanders, J., dissenting) (noting that at least forty-eight states have adopted the Uniform Controlled Substance Act and all but two expressly require knowledge to be proved as an element of unlawful possession); Dawkins v. State, 313 Md. 638, 547 A.2d 1041, 1045, 1046 n. 10 (1988) ("In surveying the law of other states that have adopted the Uniform Controlled Substances Act, we note that the *424 overwhelming majority of states, either by statute or by judicial decision, require that the possession be knowing”; "Most states addressing the issue of possession of controlled substances hold that the accused must not only know of the presence of the substance but also of the general character of the substance.”).

. The due process language used in article I, section 9, of the Florida Constitution is virtually identical to the language used in the Fifth and Fourteenth Amendments to the United States Constitution. Cf. State v. Hoggins, 718 So.2d 761, 770 (Fla.1998) (holding that an accused's right to remain silent under article I, section 9, of the Florida Constitution precluded the use of post-arrest, pre-Miranda silence to impeach a defendant’s testimony at trial even though the Federal Due Process Clause permitted such a use).

. United States v. U.S. Gypsum Co., 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (quoting Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 95 L.Ed. 1137 (1951)); see also Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (reciting the same).

. In a similar vein, lower courts and contemporary scholars have characterized the guilty knowledge requirement as a fundamental tenet of criminal law. See, e.g., Cordoba-Hincapie, 825 F.Supp. at 495-96; Garnett v. State, 332 Md. 571, 632 A.2d 797, 801 (1993).

. Professor LaFave, who is considered to be a leading authority in the area of criminal law, has also offered in his substantive criminal law treatise the observation that "some authority is to be found to the effect that a strict-liability criminal statute is unconstitutional if (1) the subject matter of the statute does not place it ‘in a narrow class of public welfare offenses,’ (2) the statute carries a substantial penalty of imprisonment, or (3) the statute *429 imposes an unreasonable duty in terms of a person’s responsibility to ascertain the relevant facts.” 1 W. LaFave, Substantive Criminal Law § 5.5(b) at 389-90 (2d ed. 2003) (footnotes omitted). In addition, some federal precedent holds that a felony statute prescribing substantial penalties for conviction will subject the defendant to significant social stigma and violates due process unless it requires the State to prove intent or knowledge. See, e.g., United States v. Wulff, 758 F.2d 1121, 1125 (6th Cir.1985) (holding that a felony provision of the Migratory Bird Treaty Act, which did not require proof of scienter, violated due process because the crime was not one known at common law, had a maximum penalty of two years’ imprisonment or fine of $2,000, and created a felony conviction that irreparably damages reputation).

. See N.D. Cent.Code § 19-03.1-23 (2012); see also State v. Mittleider, 809 N.W.2d 303, 306 (N.D.2011).

. I emphasize that requiring the defendant to establish lack of knowledge of the illicit nature of the controlled substance, as opposed to requiring the State to prove the presence of such knowledge, does not impermissibly shift the burden of proof to the defendant. A state cannot require a defendant to prove the absence of a fact necessary to constitute a crime, see Mullaney v. Wilbur, 421 U.S. 684, 684-85, 701, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and the State must prove each element of the charged crime beyond a reasonable doubt, see In re Winship, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, removing a component of mens rea from the offense does not amount to shifting the burden of proof; rather, the Legislature has chosen to redefine what conduct amounts to an offense under the Act. See Stepniewski v. Gagnon, 732 F.2d 567, 571 (7th Cir.1984) (concluding that by removing the element of intent from a criminal statute, the state legislature did not impermissibly shift the burden of proof because the legislature simply redefined the conduct that violates the statute).